IN THE SUPREME COURT OF NORTH CAROLINA

No. 41A14

11 June 2015

STATE OF NORTH CAROLINA

v.

GREGORY ELDER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 753 S.E.2d 504 (2014), vacating a judgment entered on 17 December 2012 by Judge Linwood O. Foust in Superior Court, Mecklenburg County, and remanding for entry of an order allowing defendant's motion to suppress. Heard in the Supreme Court on 12 January 2015.

> *Roy Cooper, Attorney General, by Ward Zimmerman, Special Deputy Attorney General, for the State-appellant.*

> *Michele Goldman for defendant-appellee.*

NEWBY, Justice.

In this case we must determine whether N.C.G.S. § 50B-3 authorized the district court to order a search of defendant's person, vehicle, and residence pursuant to an ex parte civil Domestic Violence Order of Protection ("DVPO") and whether the ensuing search violated defendant's constitutional rights. Because the district court exceeded its statutory authority by ordering the search, and because the warrantless

search lacked a basis in probable cause and no exigent circumstances were present, we modify and affirm the decision of the Court of Appeals.

On 23 September 2010, at the request of defendant's then-wife, the district court entered an ex parte DVPO against defendant under N.C.G.S. § 50B-3. In the DVPO the district court found that:

> [d]efendant threatened to get some gasoline and torch their son's pre-school, her house and her sister's house. He also stated that "I'm gonna get you all," and that "you won't [expletive deleted] stop me, the police won't [expletive deleted] stop me." He has a history of substance abuse and mental illness. He has also made threats to anyone attempting to go into the marital residence.

Concluding, *inter alia*, that defendant had committed acts of domestic violence in the past and that he continued to present a danger of future violence, the court ordered defendant to surrender his firearms, ammunition, and gun permits, as provided in N.C.G.S. § 50B-3.1. Relying on subdivision 50B-3(a)(13), which authorizes the court to order "any additional prohibitions or requirements the court deems necessary to protect any party or any minor child," the court further ordered in the DVPO that "[a]ny Law Enforcement officer serving this Order shall search the Defendant's person, vehicle and residence and seize any and all weapons found." Notably, the court made no findings or conclusions that probable cause existed to search defendant's property or that defendant even owned or possessed a weapon.

After several attempts, officers served the DVPO on defendant at his residence three days after it was issued. Officers knocked on defendant's door for fifteen

minutes before he came outside.  Defendant then closed the front door of the house and locked the door.  An officer took defendant's keys from his pocket, and officers entered the house to execute the search for weapons ordered in the DVPO.  Before the search began, officers arrested and handcuffed defendant under a valid arrest warrant for communicating threats.  Once inside defendant's home officers smelled marijuana and followed the odor to the basement, where they found a marijuana growing operation.  Defendant was charged with manufacturing a controlled substance, maintaining a place to keep controlled substances, and possession of drug paraphernalia.

On 8 October 2012, defendant filed a pretrial motion to suppress the evidence discovered during the search of his residence.  He contended that the district court did not have statutory authority to order a search under the DVPO and that the search violated his constitutional rights because "the police had neither reasonable suspicion nor probable cause to search his home and no exceptions to the fourth amendment existed."  The Superior Court, Mecklenburg County denied defendant's motion to suppress, and defendant pled guilty to all three charges, reserving his right to appeal the denial of his motion to suppress.

A divided panel of the Court of Appeals reversed the superior court's ruling, vacated the judgment entered upon defendant's guilty plea, and remanded for entry of an order allowing the motion to suppress.  *State v. Elder*, ___ N.C. App. ___, ___, 753 S.E.2d 504, 513 (2014).  The majority held, *inter alia*, that the relevant DVPO

statutes, when read *in pari materia*, do not authorize the district court to order a general search of defendant's person, vehicle, and residence for weapons. *Id.* at ___, 753 S.E.2d at 510. The Court of Appeals further held that the ex parte DVPO was not a de facto search warrant because it contained no findings of probable cause and that no exigent circumstances justified a warrantless search; moreover, the majority found that no exigent circumstances existed to justify a "protective sweep" of the home. *Id.* at ___, 753 S.E.2d at 510-12. Therefore, the search violated defendant's rights under the Federal and State Constitutions. *Id.* The dissent argued that section 50B-3, when read broadly, authorizes the district court to order a search for weapons under a DVPO. ___ N.C. App. at ___, 753 S.E.2d at 513 (Bryant, J., dissenting). The State filed a notice of appeal based on the dissenting opinion.

Our General Assembly enacted the Domestic Violence Act, N.C.G.S. Chapter 50B, "to respond to 'the serious and invisible problem' of domestic violence." *Augur v. Augur*, 356 N.C. 582, 591, 573 S.E.2d 125, 132 (2002) (citation omitted). Subsection 50B-3(a) states that if a court finds a defendant committed an act of domestic violence, the court must grant a DVPO "restraining the defendant from further acts of domestic violence." N.C.G.S. § 50B-3(a) (2013). The statute then lists thirteen types of relief that the court may order in a DVPO. *Id.* The first twelve are specific prohibitions or requirements imposed on a party to the DVPO. The last type of relief is a catch-all provision that authorizes the court to order "*any* additional prohibitions

or requirements the court deems necessary to protect any party or any minor child." N.C.G.S. § 50B-3(a)(13) (emphasis added).

We disagree with the State's contention that the General Assembly intended a broad interpretation of the word "any." The plain language of section 50B-3 does not authorize courts to order law enforcement to search a defendant's person, vehicle, or residence under a DVPO. *See Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988) ("When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." (citations omitted)). The word "any" in the catch-all provision modifies "additional prohibitions or requirements," N.C.G.S. § 50B-3(a)(13), and this provision follows a list of twelve other *prohibitions or requirements* that the judge may impose *on a party* to a DVPO, *id.* § 50B-3(a)(1)-(12). For example, the court may prohibit a party from harassing the other party or from purchasing a firearm, and it may require a party to provide housing for his or her spouse and children, to pay spousal and child support, or to complete an abuser treatment program. *Id.* § 50B-3(a)(3), (6), (7), (9), (11), (12). It follows, then, that the catch-all provision limits the court to ordering a party to act or refrain from acting; the provision does not authorize the court to order law enforcement, which is not a party to the civil DVPO, to proactively search defendant's person, vehicle, or residence.

Not only is this interpretation demanded by the plain language of the statute, but it is consistent with the protections provided by the Federal and State Constitutions. *See Smith v. Keator*, 285 N.C. 530, 534, 206 S.E.2d 203, 206 (noting that when possible, courts should interpret statutes in a manner consistent with our constitutions), *appeal dismissed*, 419 U.S. 1043, 95 S. Ct. 613, 42 L. Ed. 2d 636 (1974). The Federal and State Constitutions protect fundamental rights by limiting the power of the government. Yet under the State's broad interpretation here, district courts would have seemingly unfettered discretion to order a broad range of remedies in a DVPO so long as the judge believes they are necessary for the protection of any party or child. This interpretation contravenes the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution.

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV, XIV. Though Article I, Section 20 of the North Carolina Constitution contains different language, it provides the same protection against unreasonable searches and seizures. *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984) (citation omitted). Subject to a few well-delineated exceptions, the constitutions prohibit officers from invading the home without a valid warrant based on probable cause. *State v. Allison*, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) (noting that warrant not required when exigent circumstances and probable cause exist); *State v.*

*Little*, 270 N.C. 234, 238, 154 S.E.2d 61, 65 (1967) (recognizing consent as an exception to the warrant requirement). The United States Supreme Court has explained:

> An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope. A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case.

*Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 621-22, 109 S. Ct. 1402, 1415-16, 103 L. Ed. 2d 639, 663 (1989) (citations omitted).

A search unsupported by a warrant or probable cause can be constitutional when the " 'special needs' " of the State, " 'beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S. Ct. 3164, 3168, 97 L. Ed. 2d 709, 717 (1987) (citation omitted). The United States Supreme Court has limited this exception to circumstances in which "the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by" requiring a warrant and probable cause. *Skinner*, 489 U.S. at 624, 109 S. Ct. at 1417, 103 L. Ed. 2d at 664 (special need to assure railroad employees operating trains are not under influence of drugs or alcohol); *see also, e.g.*, *Griffin*, 483 U.S. at 873-74, 107 S. Ct. at 3168, 97 L. Ed. 2d at

717-18 (special need to supervise and search probationers); *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S. Ct. 733, 742, 83 L. Ed. 2d 720, 734 (1985) (special need to deter drug use in public schools).

While domestic violence is certainly a significant problem and the State's interest in protecting victims from domestic violence is vital, the facts of this case do not justify a departure from the usual warrant and probable cause requirements. Defendant's fundamental right to privacy was paramount because his home is "protected by the highest constitutional threshold." *State v. Grice*, 367 N.C. 753, 760, 767 S.E.2d 312, 318 (2015). Moreover, it was not impracticable for officers to obtain a search warrant if they had a reasonable basis to believe defendant possessed weapons that posed an imminent danger. An ex parte DVPO that contains no indication that weapons are present simply does not implicate the same concerns as other cases in which the Supreme Court has found a special need to circumvent the warrant and probable cause requirements. Therefore, by requiring officers to conduct a search of defendant's home under sole authority of a civil DVPO without a warrant or probable cause, the district court's order violated defendant's constitutional rights.

Accordingly, we hold that in interpreting the statute according to its specific terms, as well as in a manner consistent with the Federal and State Constitutions, N.C.G.S. § 50B-3(a)(13) does not authorize the district court to order a search of defendant's residence under a civil DVPO. Furthermore, the search of defendant's home, conducted without a warrant or any articulable exception to the warrant

requirement, violated defendant's fundamental rights protected by the Federal and State Constitutions. Therefore, the superior court should have granted defendant's motion to suppress, and the decision of the Court of Appeals is modified and affirmed.

MODIFIED AND AFFIRMED.